SLAUGHTER vs UNITED STATES.

Opinion delivered October 19, 1904.

1. *Murder—Absence of Judge During Trial—Ground for Reversal.*

> In capital cases the absence of the trial judge during every portion of the trial is absolutely necessary to a trial such as contemplated by law, and such absence is ground for reversal.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Dudley Slaughter was convicted of manslaughter, and appeals. Reversed.

*Eddleman & Graham, Cruce, Cruce & Bleakmore,* and *H. M. Furman,* for appellant.

*W. B. Johnson,* U. S. Atty., and *Jas. E. Humphrey,* Asst. U. S. Atty., for the United States.

RAYMOND, C. J. The appellant was indicted for the murder of William Watson, and convicted of the crime of manslaughter, in the United States Court for the Southern District of the Indian Territory. On April 11, 1903, he was sentenced to imprisonment in the United States Penitentiary at Ft. Leavenworth, Kan., for a term of 10 years, and fined $1,000 and costs. From this judgment an appeal is taken to this court.

Three errors are assigned, but under the view we take of the case a decision upon the third will be decisive of the case.

During the argument of the assistant district attorney the presiding judge left the courtroom for a few minutes, and, as shown by the bill of exceptions, the following occurred: "Be it further remembered, that during the trial of this cause, and while the Assistant United States District Attorney, Mr. James E. Humphrey, was making his opening argument for the government to the jury, the presiding judge retired from the courtroom, directing the bailiff in charge of the swinging doors to keep the same open while he was out of the courtroom. He then passed out across a hall about 12 feet wide, and into his private chamber, directing his court messenger to keep the door from his chamber into the hall open, and was absent from and without the courtroom for a very short space of time; and that during such absence of the presiding judge, and while the said Assistant United States Attorney was making such argument, the following colloquy occurred between the said Assistant United States Attorney and J. C. Graham, Esq., one of the attorneys for the defendant, which colloquy the presiding judge did not hear. Mr. Humphrey, in his argument, said: 'In my opening statement to you, gentlemen of the jury, I stated to you that the testimony in this case would develop that the deceased was driving and that Slaughter was using the whip; and when counsel on the other side came to reply to that they very cautiously denied it. They said we would not show such a thing; that Slaughter was driving.' Whereupon Mr. Graham remarked: 'I did not say that.' Further along in said argument, and during such absence of the presiding judge, Mr. Humphrey said: 'Now, Mr. Page, who was sitting in front of his tent, is brought here before you, and he displays that scene. Mrs. Page was out in the field southeast from them 150 yards or more. She says, "I saw the buggy traveling along at the same rate—the same rate of speed." Mr. Page said for two or three minutes he watched them, as he guesses, a couple of hundred yards west of the house, those drunken fellows'—Whereupon Mr. Graham remarked: 'There

is no testimony of that kind in the record.' And Mr. Humphrey replied: 'Mr. Graham, you keep your mouth shut.' To which Mr. Graham answered: 'Well, you keep within the record.' Thereupon Mr. Humphrey, turning to Mr. Graham, in a violent manner said: 'You keep your bazoo shut, and go to the court with your objections.' To which Mr. Graham replied: 'I can't; the court is not present.' "

One of the causes assigned for a new trial was the absence of the presiding judge from the court room during the argument, and in support of the motion the following affidavits were filed:

"I, M. Gorman, being duly sworn, on oath do say: That I was present at the trial of Dudley Slaughter, in Pauls Valley, on the charge of murder. That during the said trial, and while Mr. J. E. Humphrey, Assistant United States Attorney, was making his opening argument for the government to the jury, my attention was called to the fact that the court had left the room. About this time I went to the water bucket in the court room to get some water, and, there being no water in the bucket, went out of the front door of the court room, across the hall, about twenty feet wide, and went to the door of the clerk's office. Some one was inside dictating to a stenographer, and, not wishing to interrupt them, I stepped back, and waited in the hall for probably three or four minutes. The parties continued busy, and I did not go into the clerk's office for water, but returned to the court room; and just as I passed the door of the judge's private room he opened the door and came out, and as I went into the court room he came in behind me. Before I left the court room a colloquy took place between Mr. Humphrey and Mr. Graham, in which I heard Mr. Humphrey tell Mr. Graham to keep his bazoo closed, and to make his objections to the court, and heard Mr. Graham reply, that he could not, as the court was absent."

"I, Phillip Barrett, being duly sworn, on oath say: That the colloquy as between Mr. Humphrey and Mr. Graham, as copied into the hereto attached motion for new trial, is correctly transcribed from my notes of the speech of Mr. Humphrey as I took the same in shorthand as it occurred on the trial of said Dudley Slaughter at Pauls Valley."

The district attorney, in opposition to these affidavits filed the following:

"M. Cecil, being first duly sworn, on his oath deposes and says that he was one of the court baliffs for the United States Court at Pauls Valley at the March, 1903, term, and was present in the court room during the trial of the above-entitled cause; that at the beginning of the argument of Mr. Humphrey for the government the judge passed out of the court room to the chamber across the hall; that as the judge passed out of the court room he instructed affiant to keep the door wide open, in order that he might hear everything going on in the court room while at chambers. Affiant states that he obeyed this instruction, and kept the court room wide open. Affiant further states that the judge was out of the court room not exceeding one minute, when he returned, and affiant closed the door."

"Charley Croomes, being first duly sworn, upon his oath deposes and says that he is messenger for Hon. Hosea Townsend, United States Judge; that he was present at Pauls Valley during the trial of the case of United States vs Dudley Slaughter at the March, 1903, term of court, that at the beginning of the argument for the government by Mr. Humphrey the judge went to his chambers adjoining the court room in Pauls Valley, with a hall intervening; that as the judge passed into said chambers affiant started to close the doors, and the judge stopped affiant, and ordered affiant to keep the door open, so he could hear what was

going on in the court room. This affiant did. The judge was in his chambers only for a short space of time—long enough to use the urinal—and immediately returned to the court room."

The question is, was the absence of the trial judge from the trial during the argument of the United States Attorney reversible error? We have examined many authorities, and we have come to the conclusion that in the trial of a capital case without the presence of a presiding judge at all times to uphold the majesty of the law and enforce its mandates there can be no trial such as is contemplated by the law. The proceedings will not run without his superintending and controlling power, even for a moment. If it becomes necessary for the presiding judge to retire for a few minutes, he should suspend the proceedings until his return. Nor does it make any difference whether he retires from the court room during the introduction of the evidence or the argument of counsel. The argument is just as much a part of the trial as the introduction of testimony, and to be able to pass upon the motion for a new trial the judge should be present in the court at all times during the progress of the case from the time the clerk calls the jury into the box until they retire with their sworn officer to consider of their verdict. The power of the court to suspend the proceedings at all times is ample, and the better practice is to order a suspension if it becomes necessary for the judge to absent himself from the court room. "It is improper for a presiding judge to absent himself from the court room during the trial of a case before him, without suspending the trial in his absence. This rule as to the necessity for the presence of the judge is based upon the idea that the judge is an essential element of the court, and that there can be no court in the legal sense in his absence. This rule applies not only in the case of a single presiding judge, but also where the court consists of several judges, if the absence of one of them works a disorganization of the court. * * * The presence of

the presiding judge is as essential during the argument as at any other stage of the trial. It is essential that the judge should hear all that is said in the trial, in order that he may intelligently review the proceedings upon a motion for a new trial. In requiring the presence of the judge during the progress of the argument in a trial before him it is not meant that he must actually listen to every word of the counsel while addressing the jury, nor that he may not change his position in the court room, or temporarily engage in conversation, reading, or writing, etc., but that he must remain within hearing of counsel, so as to be able instantly to assert his authority if demanded by anything that may occur. When this requirement is complied with, the fact that the judge is in another room will not be held to constitute absence within the meaning of the rule. * * * According to the weight of authority, however, in the prosecution of felonies the presence of the judge at all stages of the trial is absolutely essential to its validity, and the absence of the judge from the trial, without suspending the same, for any length of time, or for any purpose, will violate the whole proceeding, and a judgment of conviction will be reversed whether objection be made or not, and, if consent be given, it will not be binding on the accused. According to these decisions the relinquishment by the judge, even though temporary, of control of his court and conduct of the trial, will work, as to the particular case, a dissolution of the court." Am. & Eng. Ency. of Law (2d Ed.) pp. 719, 720.

An interesting discussion will be found in Mr. Thompson's excellent work on trials: "When, during the trial of a case, the judge leaves the bench and withdraws from the bar, he should order a suspension of business until his return. His immediate presence tends to preserve the legal solemnity and security of the trial, and upholds the majesty of the law. Especially while a witness for the state is under examination should the judge not retire beyond the bar, without directing the examination to

cease during his temporary absence, however necessary or however brief his absence may be. The guilty and the innocent are alike entitled to be tried according to law, in the immediate presence of one of the state's judges." Thompson on Trials, vol. 1, § 212. "The right of argument, as seen in a former chapter, is a valuable right, secured to every suitor by the principles of Anglo-American law, which are embodied in American constitutions. But the right has its limits. The judge has power to see that it is not abused, and may, to this end, exercise a reasonable control over the course of the argument. To this end it is his duty to remain on the bench during the argument to the jury; and, if he vacate the bench, and, while he is absent, counsel, in arguing their client's cause to the jury, overstep the limits of privilege accorded to advocacy, to the manifest prejudice of the opposite party, a new trial will be ordered by an appellate court, in the exercise of a proper superintendence. The presiding judge is not a mere nose of wax; nor is he a mere umpire in a gladiatorial contest; nor is it merely his office to keep the peace in the court room while the advocates and the jurors try the case. He not only checks abuses of the privilege of argument, but he decides, in cases of dispute, what evidence has been admitted. In those jurisdictions where the instructions precede the argument, it is his duty to interpose and restrain counsel who is indulging in argument and illustrations before the jury which are unwarranted by the instructions of the court, and which will, if unrestrained, be likely to mislead the jury; and it has been well said that 'no duty incumbent upon the judge of a trial court is more imperative, nor more important to the fair and orderly administration of justice, than that of interposing to restrain everything in the course of the trial that tends to mislead the jury, and to divert their minds from the strict line of inquiry with which they are charged." Thompson on Trials, vol. 1, § 955.

The Supreme Court of Illinois, in the appeal of Meredeth, who was indicted in the McLean circuit court for the murder of

Murphy, had occasion to pass upon the question under review. There the judge retired during the argument by consent of all the counsel, and called upon one of the members of the bar to preside during his absence. Mr. Justice Scott, in delivering the opinion of the court, said: "It is not material whether the judge of the circuit court was absent from the court room during the trial of the cause by consent of counsel for the defense. Neither accused nor his counsel for him could consent that the judge of the court before whom the cause was being tried might be elsewhere employed in other official duties, and the cause be presided over by members of the bar selected for that purpose. It makes no difference that the judge was in another part of the same building. It is no less error than if he had been in another county. Where the judge is engaged in trying causes, there is the court, and he can hold no court elsewhere, by proxy, at the same time. The argument of a cause is as much a part of the trial as the hearing of evidence. It is a right in his defense, secured by the law of the land, of which a citizen cannot be deprived. * * * The decision was not affected by the consideration that the judge was present a part of the time during the argument of the case. If he could be absent during any part of the trial, and his official duties could, during such time, be performed by a member of the bar, on the same principle his absence during the entire trial might be justified." Meredeth vs People, 84 Ill. 479. This same point was before the Illinois Supreme Court again in the appeal of Thompson, who was found guilty in Cook criminal court of an assault with intent to commit murder. In that case the presiding judge, during the closing argument, left the court room for the purpose of preparing his instructions to the jury (in that state the instructions being read to the jury by the judge after the arguments have been concluded). The court, in reversing the judgment on account of the absence of the judge, says: "It appears from the bill of exceptions contained in the record that during the argument of the case before the jury the

presiding judge left the court room, and entered his private room, and remained out of the court room during the entire closing argument of the state's attorney. It is true that the judge was in a private room adjoining the court room, preparing instructions to be given to the jury; but he could not, and, as appears from the record, did not, hear the argument to the jury. And during the closing argument repeated objections were interposed to remarks of the state's attorney, but, as the judge holding the court was absent from the court room, and there was no presiding judge present to pass upon the questions raised or attempted to be raised, they were never decided. On the trial of a criminal case before a jury the defendant has the right to be heard before the jury in person or by counsel, as he may elect, and the people have a right to be heard through the state's attorney, or such other persons as may be selected for that purpose. This is a right guaranteed by law. Indeed, the argument before a jury is a part of the trial of a cause, as well as the introduction of evidence to prove the innocence or guilt of the defendant, or any other fact at issue in the trial. If the presiding judge may leave the court room and engage in other business during the argument before the jury, he may upon the same ground leave while the evidence is being introduced during the progress of the trial, at any other stage of the proceeding. Under our system of practice in the circuit court, during the progress of any judicial proceeding the law requires a presiding judge to sit during each and every stage of such proceedings, whether it be a jury trial or some other proceeding in court, and the presence of the judge cannot be dispensed with. * * * Had the judge stepped out of the court room into his private room for a short time, where he could still hear the argument, and where he could have been in a position to pass upon any question which might properly arise in the argument, we are not prepared to say that an error would have occurred. But such was not the case here. No part of the closing argument for the state was heard, and, al-

though several objections were made to different portions of the argument, they were not, on account of the absence of the judge from the court room, passed upon or decided. Under the law the defendant, who was on trial for a serious crime—one which deprived him of his liberty—had the right to the presence of the presiding judge during the argument of the case before the jury and the absence of the judge was, in our opinion, an error of sufficient magnitude to reverse the judgment." Thompson vs People, 144 Ill. 378, 32 N. E. 968.

The Kansas Supreme Court passed upon a similar question in a late case, and Justice Johnson, in rendering the opinion of the court, uses the following language: "Another objection is based on the temporary absence of the presiding judge during the progress of the trial. It was shown on the motion for a new trial, beyond dispute, that during the argument in behalf of the defendant the judge left the bench, and passed into an adjoining room, closing the door behind him, and that he remained there for a period of about 10 minutes. During this time the judge appears to have been out of sight and hearing of the jury and counsel, and where he could not hear the argument or exercise control over the proceedings in the court room. The absence of the judge during the progress of the trial cannot be sanctioned. The argument of a cause is an important part of the trial, and it is essential that it should be conducted in the presence and hearing of the judge, who must ultimately approve the proceedings and render judgment. The hearing and conduct of the argument is almost, if not quite, as important as the hearing and reception of testimony; and the judge should be present to see that counsel, in their arguments, do not go beyond the bounds of legitimate discussion, and to determine any objections that may be raised. In fact, there can be no court without a judge, and he cannot even temporarily relinquish control of the court or the conduct of the trial. It is necessary that he should hear all that

transpires in the trial, in order that he may intelligently review the proceedings upon the motion for a new trial. It is essentially important that he should be visibly present every moment of the actual progress of a criminal trial where the highest penalty of the law may be imposed. The defendant is entitled to be tried in a court duly constituted, and, if the presiding judge abandons the trial, or relinquishes control over the proceedings, the accused has good cause to complain." State vs Beuerman, 53 Pac. 874.

The Supreme Court of Colorado, in the Case of O'Brien on appeal from conviction of a felony, following the same line of reasoning, said: "Under our judicial system every criminal trial must take place in open court. It must be conducted in the presence of the judge as well as of the jury. The judge must be present to superintend the proceedings, uphold the majesty of the law, and thus give protection and security to all parties interested or concerned in the result of the trial. The arguments of counsel, as well as the taking of the evidence, are a part of the trial, and the judge cannot properly absent himself while such proceedings are being carried on. It is his duty to be present, and see to it that counsel in their arguments do not travel outside the record, nor transcend the limits of legitimate discussion. Moreover, the presence of the judge is essential to the organization of a court for the trial of felony cases. If the judge is absent while substantial proceedings, such as the taking of evidence or the argument of counsel, are being carried on in the presence of the trial jury, such proceedings must be regarded as coram non judice. * * * The Constitution guaranties that every person accused of crime shall have a public and impartial trial, and that the accused shall have the right to appear and defend in person and by counsel. These provisions imply that the trial shall be conducted in open court, and under the protection of the court. Of what value are such guaranties if they may be talked away in the absence of the court, the only power that can

give them efficiency? The doctrine announced by this opinion imposes no hardship upon the presiding judge. He is always the master of the situation, and may order a recess or temporary suspension of the proceedings during any absence that may be necessary on his part." O'Brien vs People, 31 Pac. 230.

The Supreme Court of Arkansas, in the appeal of Stokes from a judgment of conviction for murder in December, 1902, in reversing the case, says: "Appellant was convicted of the crime of murder in the first degree. The record recites that: 'During the closing argument of Creed Caldwell, who assisted W. B. Sorrells, the regular prosecuting attorney, in the prosecution of this case, and in the closing argument on behalf of the state, the said Creed Caldwell, while the court had retired to the room of the chancellor in the courthouse, and adjoining to the court room, made use of the following language, to wit: "Gentlemen of the jury, Mr. Foster, the attorney for the defendant, is too shrewd and too smart a lawyer to put the defendant on the stand to testify in this case." Counsel for the defendant interrupted counsel for the state, and begged him to desist from such line of argument, but was unable to get him to refrain therefrom until the sheriff could notify the judge of counsel's conduct, and, while the sheriff was on the way to the chancellor's room for the purpose of informing the court, the said Creed Caldwell, as counsel for the state, continued, and said to the jury that he did not care what anybody said; that was the law; and that, if Mr. Foster had put the defendant on the stand as a witness, it would not take this jury ten minutes to break his neck.' The record continues: 'As soon as the court was informed of the language and conduct of the said Creed Caldwell, which was within one minute thereafter, and the defendant could raise his objections to the remarks and language used by him to the jury and in his argument, the court proceeded to rebuke the said Caldwell and charge the jury in the following language, to wit: "Mr. Caldwell, I am certainly

astonished that you should violate the plain letter of the law in this manner." Here Mr. Caldwell stated that he did not know that there was a statute forbidding him to refer to the defendant's failure to testify. The court continued: "Gentlemen of the jury, the law permits the defendant to testify if he sees proper to do so, but this is a matter to be decided by his counsel; and the same law expressly forbids the counsel for the state to refer to the fact that the defendant does not go on the stand as a witness. It was highly improper for him to do so, and you must not let his language on that subject influence you in the slightest degree in arriving at your verdict. You must decide this case on the evidence before you, and I charge you that you must not consider the fact in any manner that the defendant did not testify as a witness. That is not even a circumstance in the case, and must not be allowed to influence your minds or prejudice the defendant's case. You cannot and must not consider the fact that defendant's counsel saw proper not to call him to the stand. That was a matter for his counsel to decide on, and with which you have no concern. You must banish the words of Mr. Caldwell on that subject, and decide the case just as you would had they not been uttered." ' The facts shown by the above recitals are made one of the grounds of the motion for new trial. While it appears that the judge had lost control of the proceedings for only a very short time, yet that destroyed the integrity of the trial, for, without the presence of a presiding judge at all times to uphold the majesty of the law and enforce its mandates, there can be no trial such as is contemplated by the Constitution and statutes. The Constitution center the power to preside over the proceedings constituting trials in felony cases in the person of a judge. The proceedings 'will not run' without his superintending and controlling power even for a moment. We do not mean to hold that the judge must hear every word spoken, and see everything that is done in the court room, nor that he is required to remain in the same place, This at times might not only be

uncomfortable and inconvenient, but impossible. We do hold, however, that his presence where he can at all times direct the proceedings is essential. * * * The wisdom of the policy and the necessity and propriety for a strict observance of the rule is most forcefully demonstrated in this case by the conduct of counsel for the state during the absence of the judge from the court room. Had the judge been present, we cannot suppose that it would have been possible for the counsel to have said what he did in reference to the failure of the defendant to testify; for, conceding that counsel was ignorant of the statute which provides that the failure of the defendant to testify shall not create any presumption against him, still the court was familiar with this statute. And, considering the astonishment expressed by the judge after he had been informed of the remarks made by counsel during his absence, and the rebuke he administered to the counsel on account of these remarks, we cannot doubt that the judge would have promptly stopped the remarks had he been present. These remarks were exceedingly improper. The statute is positive that the failure of the defendant to testify cannot create any presumption against him. Counsel for the state made it a presumption in the most offensive and hurtful manner. Counsel for the defendant begged the counsel for the state to refrain, but the earnest importunities of appellant's counsel seemed to make the over-zealous counsel for the state only the more persistent and vehement, whereas, doubtless, one word from the judge presiding would have caused counsel to desist from a course so unfair and so prejudicial to the rights of the appellant. Hence the necessity for a presiding genius during all the stages of the trial." Stokes vs State, 71 S. W. 248.

In a leading case in Mississippi the Supreme Court, in reversing a judgment on conviction of murder, held: "If this error were merely a technical one, not vital in its nature, we would not, for that alone, reverse the judgment. But the error

here is of the gravest character.    It goes to the very organization
and constitution of the court trying the appellant on a charge of
murder.    So far as the lawful power of this court can be exerted
in affirming convictions for violations of the law of the land, it
shall be exerted.    And mere technical errors, without intrinsic
value, when we can, after a careful and thorough examination of
the whole case, confidently say that the right result has been
reached, that substantial justice has been done, and that on a
new trial no other result could easily be arrived at, will not avail
here for reversal in civil or criminal cases.    But when the de-
fendant has been, as here, denied a right secured to him by the
Constitution and the laws of the land, in a matter going to the
very constitution of the court trying him, we are compelled to
reverse the case.    In such cases the interests of society, the
stability of the laws, the due administration of justice, demand a
reversal.    Disregard of fundamental right in the case of the
guiltiest defendant, his conviction in violation of settled con-
stitutional and legal safeguards, intended for the protection of
all, are not things which affect the particular defendant in a
given case alone, but in their disastrous and far-reaching conse-
quences involve in future trials the innocent and guilty alike,
subvert justice, and disorganize society.    Guilt should be pun-
ished certainly, and condignly, most assuredly.    But guilt must
be manifested in accordance with the law of the land, else some
day the innocent, who are sometimes called to answer at the bar
of their country, may come to find themselves involved in a
common ruin, deprived of the legal trial necessary to the vindica-
tion of their innocence."    Ellerbe  vs State, 22 South. 950, 41
L. R. A. 539.

To the same effect is a decision of the Supreme Court of
Nebraska)    "And where the presiding judge in a criminal pro-
secution left the bench during the final argument of the cause,
and retired from the court room, and permitted the argument to

continue while he was absent, this is reversible error." Palin vs State, 7 Neb. 867, 57 N. W. 74..

The same controversy arose in a case before the Supreme Court of Georgia in 1900, and in sustaining the position here taken that court said: "If it were an open question, we would hold that the presence of the judge at all stages of the trial is absolutely necessary to its validity, and that the absence of the judge from the trial without suspending the same, for any length of time, no matter how short, or for any purpose, however urgenet, would vitiate the whole proceeding, whether objection was made by the parties interested or not, and whether injury resulted to any one or not. The judge is such a necessary part of the court that his absence destroys the existence of the tribunal, and public policy demands that the tribunal authorized to pass upon the life, liberty, and property of the citizens should be constituted during the entire trial in the manner prescribed by law. The great weight of authority is in harmony with this view." Horne vs Rogers, 35 S. E. 715, 49 L. R. A. 176.

The Supreme Court of Wisconsin has sustained a like ruling, and said: "The presiding judge of a trial court is charged with the duty of trying the case from the opening to the close, and he ought not to abdicate his functions even for half an hour. During such an absence grave errors or abuses of privilege may occur, and this court may be left to conflicting affidavits of over-zealous attorneys or parties in interest of interest to determine what in fact took place." Smith vs Sherwood, 95 Wis. 558, 70 N. W. 682.

Mr. S. B. Fisher, in his article on trials in the Encyclopedia of Pleading and Practice, discusses the question as follows: "With regard to prosecutions for felonies, the great majority of cases lay down and strictly enforce the general rule that the

continual presence of the judge during the entire course of the trial is essential. Some decisions expressly hold that in the trial of capital cases the judge should not retire from the bar for even a brief absence without a suspension of business until his return. The accused is entitled to a trial in a court duly constituted, and, if the presiding judge abandons the trial or relinquishes control of the proceedings, there is ground for complaint. The rule that the judge must be present during the argument will not, however, prevent him from changing his seat, or even being in an adjoining room, if not out of hearing of the proceedings, or from reading or writing, or temporarily engaging in conversation, for he is not bound to listen to every word of the argument. Decisions are not wanting which hold that in criminal as well as in civil cases it is not absolutely necessary to grant a new trial on ground of the absence of the judge during the trial, where the absence is for a short time, and is necessary, and no objection thereto is made. The weight of authority, however, is to the effect that the presence of the judge is indispensable in a prosecution for a felony, and that, whether objection be or be not made, a conviction may be reversed in the case of his improper absence." Ency. of Pleading and Practice, vol. 21, pp. 978-980. Our own Court of Appeals is on record taking the same position. Starr vs United States, 4 Ind. Ter. Rep. —, 76 S. W. 105.

In this case it appears that the judge went out of the court room, then crossed a hall 12 feet wide, and through another door passed into another room to urinate, and during his absence a controversy arose between opposing counsel. The judge certifies in the bill of exceptions that this controversy he did not hear. Then he must have been in a position where he could not hear the proceedings and direct the progress of the trial for a time, at least, during the course of the argument. If he had been present, there can be no doubt in the mind of any one acquainted with the scholarly dignity of the former chief justice of this court

that the coarse and undignified remarks would surely not have passed in one of the federal courts of the country.

The judgment is reversed for the error indicated, and cause remanded for a new trial.

CLAYTON and GILL, JJ., concur.