426 So.2d 1021 (1983)
Robert PERI, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-2107.
District Court of Appeal of Florida, Third District.
January 18, 1983.
Rehearing Denied March 10, 1983.
*1022 Bennett H. Brummer, Public Defender and Carl L. Masztal, Gerald Hubbart, Sp. Asst. Public Defenders, for appellant.
Jim Smith, Atty. Gen. and Steven R. Jacob, Asst. Atty. Gen., for appellee.
Before HENDRY and DANIEL S. PEARSON, JJ., and WOODROW M. MELVIN (Ret.), Associate Judge.
DANIEL S. PEARSON, Judge.
The questions presented by this case, ones of first impression in this state,[1] are whether a judge presiding in a criminal case may order, over the defendant's objection, that a portion of the voir dire of prospective jurors be conducted in the judge's absence; and, if not, does the judge's absence during this stage of the trial require reversal of the defendant's convictions where the defendant makes no showing that he was specifically prejudiced by the absence.

I.

The Events Below
Peri was tried and convicted of burglary and battery. During the selection of the jury, the trial judge advised the parties that she wanted the voir dire to continue in her absence, since she was scheduled to preside over the swearing in of official court interpreters in another part of the courthouse. The defendant objected. The trial judge overruled his objection and stated:
"We are going to continue the picking of the jury outside of my presence and if a problem arises, I will be available, but I see no problems with the questions being asked outside of my presence."
*1023 Defense counsel advised the court:
"[T]he Defendant does not waive the Court's presence during the final [stages of the] selection of the jury and we regard any proceedings without the presence of the Court as a nullity."
The court responded:
"We are going to continue with jury selection. I am detained right next door in another matter. I cannot do two things at the same time."
Defense counsel again objected and advised that he did not acquiesce in the judge's absence and would partake in the further proceedings only because ordered to. Counsel then noted on the record that the trial judge left the proceedings at 2:43 p.m. Voir dire continued, and the record reflects that the trial judge returned to the courtroom at 3:17 p.m. The defendant exercised one further peremptory challenge and accepted the jury, simultaneously noting his objection to the absence of the judge.

II.

The Presence of the Judge  A Constitutional Imperative
Article 1, Section 16 of the Florida Constitution and the Sixth Amendment to the United States Constitution secure to one accused of a crime a trial by an impartial jury. The presence of the trial judge is at the very core of this constitutional guarantee.
"`Trial by jury,' in the primary and usual sense of the term at the common law and in the American Constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and impaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence. This proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion.
... .
"[A] jury, properly speaking, is an appendage of a court, a tribunal auxiliary to the administration of justice in a court, that a presiding law tribunal is implied, and that the conjunction of the two is the peculiar and valuable feature of the jury trial; and, as a necessary inference, that a mere commission, though composed of twelve men, can never be properly regarded as a jury. Upon the whole, after a careful examination of the subject, we are clearly of the opinion that the word `jury' ... in the Constitution where it occurs, means a tribunal of twelve men, presided over by a court, and hearing the allegations, evidence, and arguments of the parties.
... .
"`The Constitution secures a trial by jury, without defining what that trial is. We are left to the common law to learn what it is that is secured. Now the trial by jury was, when the Constitution was adopted, and for generations before that time had been, here and in England, a trial of an issue of fact by twelve men, under the direction and superintendence of the court. This direction and superintendence was an essential part of the trial.'" Capital Traction Co. v. Hof, 174 U.S. 1, 13-16, 19 S.Ct. 580, 585-86, 43 L.Ed. 873, 877-78 (1898).[2]
See Farese v. United States, 428 F.2d 178, 180 (5th Cir.1970) (the historical prerequisite of a fair trial "is that it be conducted before unprejudiced jurors under the superintendence of a judge who instructs them as to the law and advises them as to the facts.").
Thus, courts throughout this nation have been virtually unanimous in holding
"that it is the duty of the presiding judge at criminal trials ... to be visibly present every moment of their actual progress, so that he can both see and hear all that is being done. This is a right secured to the accused by the law of the land, of which he cannot be deprived. All the formalities of the trial should be scrupulously *1024 observed, so that the people present may see and know that everything is properly and rightfully done." State v. Smith, 49 Conn. 376, 383-84 (1881).
These same courts have, correspondingly, consistently condemned the act of a trial judge absenting himself during any stage of the trial proceedings. See Moore v. State, 46 Ohio App. 433, 188 N.E. 881 (1933); Tunnell v. State, 24 Okla. Cr. 176, 216 P. 951 (1923); Moore v. State, 29 Ga. App. 274, 115 S.E. 25 (1922); Slaughter v. United States, 5 Ind.T. 234, 82 S.W. 732 (1904); Graves v. People, 32 Colo. 127, 75 P. 412 (1904); State v. Carnagy, 106 Iowa 483, 76 N.W. 805 (1898); State v. Beuerman, 59 Kan. 586, 53 P. 874 (1898); Ellerbe v. State, 75 Miss. 522, 22 So. 950 (1898); Smith v. Sherwood, 95 Wis. 558, 70 N.W. 682 (1897); Palin v. State, 38 Neb. 862, 57 N.W. 743 (1894); Thompson v. People, 144 Ill. 378, 32 N.E. 968 (1893); O'Brien v. People, 17 Colo. 561, 31 P. 230 (1892). See also Heflin v. United States, 125 F.2d 700 (5th Cir.1942); State v. Smith, supra; Turbeville v. State, 56 Miss. 793 (1879). Neither the stage of the proceeding, the length of or reason for the departure, nor the judge's proximity to the courtroom has been viewed as a factor which mitigates the harm created by the judge's absence. Heflin v. United States, supra (judge in lavatory for two or three minutes during defense counsel's closing argument); Graves v. People, supra (judge in clerk's office adjoining courtroom for five and then ten minutes during prosecutor's opening and closing arguments); State v. Beuerman, supra (judge absent ten minutes during defense counsel's closing argument); Meredeth v. People, 84 Ill. 479, 482 (1877) ("It makes no difference [that] the judge was in another part of the same building. It is no less error than if he had been in another county.").

III.

Voir Dire and Jury Selection  A Stage Like Any Other
We now address the question of whether the rule requiring the judge's presence is as applicable to voir dire proceedings as it is to any other stage of the trial. While we note that the rule requiring the judge's presence has been, at least implicitly, recognized to be applicable to voir dire and jury selection, see Haith v. United States, 342 F.2d 158 (3d Cir.1965) (rejecting defendant's collateral attack on conviction, where trial judge's presence during voir dire and jury selection had been waived by defense counsel); Stirone v. United States, 341 F.2d 253 (3d Cir.1965) (same); State v. Eberhardt, 32 Ohio Misc. 39, 282 N.E.2d 62 (1972); see also Moore v. State, supra, 115 S.E. at 25 (in dicta, noting that the presence of the judge is required during "the impaneling of a jury, the taking of evidence, the argument of the case, or any other thing which must take place in open court"), the vast number of the cited cases involve the judge's absence during segments of the trial other than voir dire and jury selection.
Beyond the fact that "[i]t is settled law that trial begins when the selection of a jury to try the case commences," State v. Melendez, 244 So.2d 137, 139 (Fla. 1971), it is axiomatic that the selection of a jury in a criminal case is a critical stage of any trial. Francis v. State, 413 So.2d 1175 (Fla. 1982). See also Frank v. Mangum, 237 U.S. 309, 338, 35 S.Ct. 582, 591, 59 L.Ed. 969, 984 (1915); Diaz v. United States, 223 U.S. 442, 455, 32 S.Ct. 250, 253, 56 L.Ed. 500, 505 (1912); Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884); Shaw v. State, 422 So.2d 20 (Fla. 2d DCA 1982) (for purposes of an accused's constitutional right to be present at all stages of a trial, the trial runs from the commencement of the selection of the jury through the discharge of the jury). As noted supra, Article 1, Section 16 of the Florida Constitution and the Sixth Amendment to the United States Constitution secure to one accused of a crime a trial by an "impartial jury." Imperfect as it may be, the process by which the "impartial jury" is obtained is through the examination of prospective jurors, historically called voir dire. Indeed, while counsel for both the State and defendant are participants in this process and have the right "to conduct an examination of each juror orally" to determine *1025 whether the juror is qualified to serve, see Fla.R.Crim.P. 3.300(b); Ritter v. Jimenez, 343 So.2d 659 (Fla. 3d DCA 1977), ultimately
"[t]he selection of a jury to try a case is a work which devolves upon the court. His purpose is to secure such jurors as are qualified for jury service and who are without bias or prejudice for or against the parties in the cause." Cross v. State, 89 Fla. 212, 216, 103 So. 636, 637 (1925) (emphasis supplied).[3]
The responsibilities of the judge in the jury selection process are manifold. The determination of impartiality in which the demeanor of the prospective juror plays such an important part is particularly within the judge's province. Ristaino v. Ross, 424 U.S. 589, 594-95, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258, 263 (1976). The latitude which is given the parties in examining prospective jurors is subject to the judge's sound discretion. Essix v. State, 347 So.2d 664 (Fla. 3d DCA 1977). The materiality and propriety of voir dire questions are to be decided by the judge. Pait v. State, 112 So.2d 380 (Fla. 1959); Story v. State, 53 So.2d 920 (Fla. 1951); Pope v. State, 84 Fla. 428, 94 So. 865 (1922); Saulsberry v. State, 398 So.2d 1017 (Fla. 5th DCA 1981); Gibbs v. State, 193 So.2d 460 (Fla. 2d DCA 1967). It is the judge who controls the time and extent of the voir dire, Blackwell v. State, 101 Fla. 997, 132 So. 468 (1931); Barker v. Randolph, 239 So.2d 110 (Fla. 1st DCA 1970), and the scope of the examination, Underwood v. State, 388 So.2d 1333 (Fla. 2d DCA 1980); Jones v. State, 378 So.2d 797 (Fla. 1st DCA 1979). The judge is the arbiter of a juror's fitness to serve, Singer v. State, 109 So.2d 7 (Fla. 1959); Barker v. Randolph, supra; Johnny Roberts, Inc. v. Owens, 168 So.2d 89 (Fla. 2d DCA 1964), and the superintendent of the construction of the jury panel, Walsingham v. State, 61 Fla. 67, 56 So. 195 (1911). See Pinder v. State, 27 Fla. 370, 8 So. 837 (1891). Where the bounds of a proper examination are overstepped or the law is misstated by a party, immediate correction by the judge through a curative instruction may overcome the possibility of prejudice and avoid a discharge of the panel. Romero v. State, 341 So.2d 263 (Fla. 3d DCA 1977). In sum, the presence of the judge is as essential to, and as much a critical part of, the voir dire of prospective jurors as it is of any other stage of the trial. We hold, therefore, that it was error for the trial judge to have compelled the defendant, over objection, to continue the voir dire process in the judge's absence.

IV.

The Effect of the Judge's Absence
The early perspective that a criminal jury trial without a judge was not a jury trial at all, see Capital Traction Co. v. Hof, supra; see generally Note, Waiver of the Right to Trial by Twelve Jurors in Criminal Actions, VIII Col.L.Rev. 577, 578 (1908), sired the line of cases holding that the effect of the judge's absence was to render the entirety of the proceedings coram non judice, that is, before a court without jurisdiction of the matter.
"This rule as to the necessity for that presence of the judge is based upon the idea that the judge is an essential element of the court, and that there can be no court in the legal sense in his absence." Slaughter v. United States, supra, 82 S.W. at 733.
See also Horne v. Rogers, 110 Ga. 362, 35 S.E. 715, 718 (1900) ("[t]he judge is such a necessary part of the court that his absence destroys the existence of the tribunal"); State v. Beuerman, supra, 53 P. at 875 ("there can be no court without a judge"). One obvious consequence of this "no judgeno jurisdiction" view was that any inquiry concerning harm to the defendant was irrelevant, since the absence of the judge, ipso facto, rendered the proceeding a nullity. *1026 See Moore v. State, supra, 188 N.E. 881; Slaughter v. United States, supra; Graves v. People, supra. Were we to look solely to the coram non judice line of cases, our labor would be done, since the trial of Peri would suffer from an irreparable jurisdictional defect.
We are cognizant, however, that more recent cases, exemplified by Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), have adopted a far less restrictive view of jurisdiction. In Zerbst, the Supreme Court, addressing the right of an accused to counsel in federal criminal trials, held that although the assistance of counsel is "an essential jurisdictional prerequisite" to a federal court's authority to proceed to conviction and sentence, when the right to such assistance is properly waived, a jurisdictional impediment may be removed.
"If the accused, however, is not represented by Counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of a trial may be lost `in the course of the proceedings' due to failure to complete the court  as the Sixth Amendment requires  by providing Counsel for an accused who is unable to obtain Counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by habeas corpus." 304 U.S. at 468, 58 S.Ct. at 1024, 82 L.Ed. at 1468 (footnotes omitted).
We are persuaded that even as in Zerbst, the rule requiring counsel "to complete the court" is waivable, the rule requiring the judge's presence during all proceedings in a criminal case, since primarily for the benefit of the defendant, is likewise waivable.[4]See, e.g., Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930) (defendant may waive right to jury trial); United States v. Kobli, 172 F.2d 919 (3d Cir.1949) (same, right to public trial); Kersten v. United States, 161 F.2d 337 (10th Cir.1947) (same, right to be tried in state and district where crime committed); Francis v. State, supra (same, right of defendant to be present during voir dire); Tucker v. State, 417 So.2d 1006 (Fla. 3d DCA 1982) (same, statute of limitations). See also Bellaire Securities Corp. v. Brown, 124 Fla. 47, 83, 168 So. 625, 639 (1936) ("A party may waive any right to which he is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the Constitution."). Although it is abundantly clear that Peri did not waive  indeed, insisted upon  the presence of the trial judge, cf. Haith v. United States, supra; Stirone v. United States, supra; Heflin v. United States, supra, the fact remains that once the presence of the trial judge (even if labeled a jurisdictional prerequisite) is deemed waivable, his presence can no longer be said to be indispensable to a valid judgment of conviction in a criminal case. Tucker v. State, supra, 417 So.2d at 1013 (Pearson, J., concurring).

*1027 V.

The Prophylaxis
If, then, the absence of the trial judge does not, ipso facto, render the proceeding a nullity, the question becomes whether reversal is required in a case, as here, where the defendant can point to no specific prejudicial event which occurred in the judge's absence.
In our view, a rule requiring the defendant to show prejudice, or one requiring the State to show a lack of prejudice, is both unworkable and ill-advised. In Ivory v. State, 351 So.2d 26 (Fla. 1977), our Supreme Court refused to adopt a rule calling for a showing of prejudice in an instance where the trial judge communicates with the jury in the absence of the defendant and his counsel. As former Justice England, there concurring, observed:
"The rule of law now adopted by this Court is obviously one designed to have a prophylactic effect. It is precisely for that reason I join the majority. A `prejudice' rule would, I believe, unnecessarily embroil trial counsel, trial judges and appellate courts in a search for evanescent `harm,' real or fancied." Id. at 28 (England, J., concurring).
For like reasons, we think a prejudice rule is unworkable in the setting of the trial judge's absence from trial proceedings. As one court has observed:
"During such an absence grave errors or abuses of privilege may occur, and this court may be left to the conflicting affidavits of overzealous attorneys or parties in interest to determine what in fact took place. This Court is not organized nor authorized to try such questions, and we do not propose to do so. It avails not to say that error must be affirmatively shown. This is true, but, where the trial court has disabled itself from informing us as to what occurred, how is error to be shown save by affidavit? We cannot but regard this long absence from the bench during an important part of the trial as error which calls for a new trial. We feel we should be doing wrong to sanction any such practice. Such a rule, once established, would open the way to dangerous abuses, and break down one of the most valuable safeguards to litigants." Smith v. Sherwood, supra, 70 N.W. at 683.
See also Francis v. State, supra (inability "to assess the extent of prejudice, if any," sustained by defendant who was not present during exercise of peremptory challenges requires reversal); Cumbie v. State, 345 So.2d 1061 (Fla. 1977) (trial court's failure to make full inquiry into the question of prejudice resulting from a discovery violation is reversible as a matter of law because of inability of appellate court to determine harm); O'Connor v. Bonney, 57 S.D. 134, 231 N.W. 521 (1930) (neither the trial court nor the reviewing court ought to be left to resolve conflicting affidavits of interested and partisan attorneys).
But quite apart from the impracticality of a prejudice rule, we think such a rule will not sufficiently deter trial judges from absenting themselves from a trial in progress. We believe that only a rule which requires automatic reversal when a judge, over the defendant's objection, absents himself or herself from the proceedings will effectively remove any incentive to disregard the requirement of his or her presence and compel respect for the constitutional guarantee of a fair and impartial trial. See United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).[5]

*1028 VI.

Epilogue
The fact that the vast majority of the cases dealing with the subject were decided at the turn of or in the early part of this century indicates to us that the rule requiring the trial judge's presence, having been once firmly established, has been well-honored. However, that the present case is before us for decision is not surprising. We suspect that what occurred below is symptomatic of the disease of overcrowded dockets and the perceived corollary need to move cases as quickly as possible. We are not insensitive to this problem. Its solution, however, does not lie any more in trials without judges than it lies in trials without juries, without counsel, or without rules of evidence  all of which, rather obviously, would speed things along. As one court noted, nearly eighty years ago:
"It may be a hardship for an overworked judge to sit continuously for a long time on the bench, but his presence in the courtroom at all times while a trial is in progress is so essential to the very existence of a court, and so important to the due administration of justice, that the strict rule which requires his visible presence should be enforced, and the contrary practice on the part of trial judges discouraged." Graves v. People, supra, 75 P. at 415.[6]
Some things never change.
The judgments of conviction are reversed and the cause remanded for a new trial.
Reversed and remanded.
MELVIN, WOODROW M., Sr., A.J. (dissenting).
I respectfully note my dissent although I agree that the trial court may have committed technical error in temporarily leaving the bench under the circumstances related by the majority. The fact remains that thereby no harm was visited upon the defendant. It is my view that Florida's time honored harmless error rule and statute mandates affirmance of the judgment.
When lead footed justice reaches the end of its long and tedious journey, it should not be caused to falter upon an imagined barricade and required to repeat the trip. Section 924.33, Florida Statutes (1981); Jenkins v. State, 423 So.2d 918 (Fla. 3 DCA 1982).
NOTES
[1] Only two Florida cases have come close to the question presented by this case. In McCollum v. State, 74 So.2d 74 (Fla. 1954), the court held that a trial judge must be present at a view by the jury in light of the mandatory provisions of Section 918.05, Florida Statutes (1951). While the voir dire rule, Fla.R.Crim.P. 3.300, assumes the presence of the judge throughout that proceeding, no rule or statute expressly requires his presence. In Skelton v. Beall, 133 So.2d 477, 479 n. 2 (Fla. 3d DCA 1961), this court, noting that the parties did not urge on appeal that the trial judge's absence during argument was error, expressed no view on the subject. Even if some view had been expressed, there may very well be a marked distinction between a judge's absence in a criminal trial and his absence in a civil trial. See Duplex Printing-Press Co. v. Journal Printing Co., 17 Del. 565, 43 A. 840 (1899); see generally Annot., Civil Trial  Judge's Absence, 25 A.L.R.3d 637 (1972).
[2] Twelve persons are no longer regarded as essential to the preservation of the right to jury trial. Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). However, Capital Traction Co. v. Hof, supra, remains sound authority for the proposition that the judge is essential to the preservation of this right.
[3] The court has no less responsibility to see to the selection of an impartial jury merely because it no longer has the right earlier recognized in Cross, see also Pinder v. State, 27 Fla. 370, 8 So. 837 (1891), to exclude the participants from the questioning of prospective jurors. See Author's Comment to Fla.R.Crim.P. 3.300, quoting the above passage from Cross v. State, supra.
[4] We are unaware of some independent public policy of this state which requires the presence of the trial judge at all stages of a criminal trial. Were this requirement rooted in public policy, as distinguished from a right personal to the accused, then it would not be waivable. See Robertson v. State, 94 Fla. 770, 114 So. 534 (1927). We point out, however, that while the judge's presence may be waived by the accused, the waiver must be concurred in by the State. While the accused has a right to have the trial judge present throughout the trial proceedings, the Constitution does not give him the right to unilaterally permit the judge's absence. See United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (approving rule requiring consent of government to defendant's waiver of jury trial under rationale that defendant has no constitutional right not to be tried by a jury; "[t]he ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right." Id. 380 U.S. at 34-35, 85 S.Ct. at 783, 13 L.Ed.2d at 630).
[5] The State argues that Haith v. United States, supra; Stirone v. United States, supra; and Heflin v. United States, supra, establish a harmless error test. In each of these cases, however, the court found that the defendant had at least impliedly consented to the trial judge's absence. In yet another case relied on by the State, Taylor v. United States, 386 F. Supp. 132 (E.D.Pa. 1974), aff'd, 521 F.2d 1399 (3d Cir.1975), there was a written waiver of the right to have the jury selected in the presence of a judge signed by defendant's counsel. Since in the present case the defendant objected to the trial judge's absence, we need not decide whether the right to have the trial judge present may be waived by a mere failure to object, or must be expressly waived by a knowing and intelligent waiver by consent. See Francis v. State, supra. And see McCollum v. State, supra (waiver of right to have trial judge present during view will not be implied from defendant's failure to object). In a case where an appropriate waiver has occurred, we would have no quarrel with a requirement that the defendant demonstrate actual prejudice. See State v. Eberhardt, 32 Ohio Misc. 39, 282 N.E.2d 62, 64 (1972) ("When the parties to a criminal case have duly waived the presence of the trial judge during voir dire and the selection of the jury, and no prejudice is shown to have resulted from the judge's absence, such absence is not ground for a new trial." (emphasis supplied)).
[6] The words of our own Supreme Court, albeit stated in a different context, carry the same import:

"The right of a defendant on trial for his life to be accorded the protection that flows from the presence of the trial judge at the view is vastly greater in importance than any transient inconvenience that the performance of this duty may impose upon the judge in charge of the trial proceeding." McCollum v. State, supra at 78.