**Raymond F. RILEY, Petitioner–
Appellant,**

v.

**George DEEDS, et al., Respondent–
Appellee.**

No. 94–15231.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 1995.

Decided June 6, 1995.

John C. Lambrose, Chief Asst. Federal Public Defender, Las Vegas, NV, for petitioner-appellant.

Karl W. Armstrong, Deputy Atty. Gen., Las Vegas, NV, for respondent-appellee.

Before: BRUNETTI, THOMPSON and HAWKINS, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

During jury deliberations in appellant Raymond F. Riley's state court trial for sexual assault and first-degree kidnapping, the jury asked the court to read back part of the trial testimony. The trial judge was not available to respond to the request. In his absence, and without any input from the judge, the jury was assembled in the courtroom with the defendant Riley, his lawyer, and the prosecuting attorney present. The judge's law clerk presided. At the jury's request, only the victim's direct testimony was read. Thereafter, the jury returned its verdict, convicting Riley of the charges against him.

After exhausting his state court remedies, Riley filed a petition for a writ of habeas corpus in the district court under 28 U.S.C. § 2254. The district court denied the petition. Riley appeals.

We have jurisdiction under 28 U.S.C. § 2253, and we reverse. We hold that the state trial judge's failure to rule on whether the victim's direct examination should have been read back, coupled with his absence and unavailability during the readback proceeding, resulted in structural error that rendered Riley's trial fundamentally unfair and deprived him of due process under the Fourteenth Amendment. We order the writ of habeas corpus issued unless the state retries Riley within a reasonable time. We do not reach the other issues raised in this appeal.

I

On September 20, 1986, seven-year-old Leatrice Broaden was playing with dolls in the ladies' room at Doolittle Park in Las Vegas when a man entered, grabbed her and dragged her to the men's room. In the men's room, the man ordered Leatrice to take off her clothes. When she refused, he covered her mouth and nose with his hand until she lost consciousness. Leatrice regained consciousness to find herself on the floor of the men's room with her pants and underwear pulled down to her ankles.

Medical examinations revealed Leatrice had sustained the following injuries: a small tear and bruising on the left side of her vagina, broken eye vessels beneath her eyes, a cut on her thumb, and a scrape on her ankle. No semen was found in her vagina, but there were hairs and various secretions in her vaginal area.

Based on identifications made by Leatrice and other eyewitnesses to the attack, Riley was arrested and charged with perpetrating the crime. At his trial, Riley did not contest the fact that Leatrice had been sexually assaulted. He contended he had been misidentified as the person responsible for the attack.

Leatrice identified Riley in court as her assailant. She testified that she had seen him on television a few days after the assault and recognized him as her attacker, and that after having seen him on television, she had picked him out of a police lineup.

On cross-examination, Leatrice testified she recognized Riley on television only after her mother told her: "Come. Look. Here's the man on T.V. that hurt you." Leatrice also admitted that she initially described the man who attacked her as having a "geri curl" and a gold tooth.[1] This description did not match Riley, who had neither a "geri curl" nor a gold tooth. It did, however, fit the description of the assailant given by two eyewitnesses to the attack—Roosevelt "Peewee" Jones and Wesley Charles Roberts.[2]

During their deliberations, the jury sent a note to the court requesting a readback of Leatrice's testimony. The parties agree the judge was not in the courthouse at the time this request was made, and he could not be located. In the judge's absence, his law clerk convened the court. He explained to the jury that the court reporter would read Leatrice's testimony from the trial transcript, and instructed the foreman to raise his hand when the jury had heard enough. At the conclusion of Leatrice's direct examination, the foreman raised his hand and the readback terminated.

Riley was found guilty and sentenced to life in prison with the possibility of parole. He is currently out on parole.

## II

We review de novo a district court's decision to grant or deny a petition for habeas corpus. *Sanders v. Ratelle,* 21 F.3d 1446, 1451 (9th Cir.1994). "To the extent it is necessary to review findings of fact, the clearly erroneous standard applies." *Thomas v. Brewer,* 923 F.2d 1361, 1364 (9th Cir. 1991).

## III

Riley contends he is entitled to habeas relief because the judge's law clerk, rather than the judge, granted the jury's request to have the victim's direct examination read back and presided during that proceeding. Riley also argues he was denied due process and a fundamentally fair trial because Leatrice's inculpating direct examination testimony was read to the jury to the exclusion of her exculpatory testimony on cross-examination.

The state responds that the decision whether and what part of a witness' testimony should be read back to the jury lies within the trial court's discretion. Moreover, the state contends the judge's absence from the readback, if error, should be characterized as trial error subject to harmless error analysis. Because Riley has not demonstrated the judge's absence prejudiced the outcome of the trial, the state argues he is not entitled to relief.[3]

A judge's absence during a criminal trial, including court proceedings after a jury begins deliberations, is error of constitutional magnitude. *See Peri v. State,* 426 So.2d 1021, 1023–24 (Fla.Dist.Ct.App.1983) (listing state court cases recognizing this principle). The presence of a judge is at the "very core" of the constitutional guarantee of trial by an impartial jury. *Id.* at 1023. "This proposition has been so generously admitted, and so seldom contested, that there has been little occasion for its distinct assertion." *Id.* (quoting *Capital Traction Co. v. Hof,* 174 U.S. 1, 13–14, 19 S.Ct. 580, 585–86, 43 L.Ed. 873 (1898)).

1. A "geri curl" is apparently a distinctive hairstyle in which the hair is worn in tight spiral curls covered by an oily sheen.

2. Roberts did not testify at trial. Jones also did not testify, but his description of the assailant was introduced through the testimony of the police officers who had interviewed him. The officers testified that, while Jones initially gave a description which matched the first one given by

Leatrice, he later changed his mind and implicated Riley.

3. We note that it may be the state's burden to show the absence of prejudice. *See O'Neal v. McAninch,* —— U.S. ——, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Because we find the error which occurred in this case was structural error not amenable to harmless error review, we do not consider this issue.

Our circuit has not considered the question whether a judge's absence during the course of a trial, regardless of the nature of the proceeding from which he is absent and the duration of his absence, amounts to structural error which is reversible per se, or trial error which is subject to harmless error analysis. *See Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). We need not decide that now. In this case, the judge was not only absent from the readback, he also exercised no discretion in the decision whether to permit Leatrice's testimony to be read back, or how much of it should be read or whether other testimony also should be read. This complete absence of judicial discretion distinguishes this case from our decision in *Hegler v. Borg,* 50 F.3d 1472 (9th Cir.1995). In *Hegler,* we held that reading back trial testimony to the jury in the defendant's absence was trial error subject to harmless error review. There, however, the trial judge ruled on the jury's request for the readback and presided during the readback proceeding.

■ The state is correct that, generally, a trial court has wide latitude in deciding whether to have testimony requested by the jury read back. *United States v. Cuozzo,* 962 F.2d 945, 952 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992). Although reading back trial testimony is "disfavored" when it unduly emphasizes particular testimony, *United States v. Barker,* 988 F.2d 77, 79 (9th Cir.1993), we review a court's decision to read back testimony only for an abuse of discretion. *United States v. Felix–Rodriguez,* 22 F.3d 964, 966 (9th Cir. 1994).

These standard of review cases are unhelpful here. The abuse of discretion standard presupposes the trial judge exercised some judicial discretion in the matter under review. In this case, the judge was not present when the jury requested that the testimony be read back, nor does the record reflect he was consulted about the matter. From what we can tell from the record, the judge's law clerk made the decision to grant the jury's request to read back the testimony. The jury was then given effective control of what testimony and how much of it would be read.

The victim's testimony was read until the jury foreman decided the jury had heard enough. None of these decisions was made by the trial judge.

■ When trial testimony is read back to a jury without the judge's approval, outside the judge's presence and when he is unavailable, the error cannot fairly be characterized as mere trial error. Trial error is error "which may ... be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless." *Arizona v. Fulminante,* 499 U.S. at 308, 111 S.Ct. at 1264. Structural error, on the other hand, is a "defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by 'harmless-error' standards." *Id.* at 309, 111 S.Ct. at 1265.

■ A conviction obtained after a proceeding in which no judge presided and no judicial discretion was exercised is "abhorrent to democratic conceptions of justice." *Hays v. Arave,* 977 F.2d 475, 481 (9th Cir.1992). In these circumstances, there is a breakdown in the construct of the trial, a structural collapse so severe that its effect on the trial cannot be "quantitatively assessed in the context of the other evidence presented." In short, the error is structural and is not susceptible to harmless error analysis.

We recognize there is a split of authority among courts which have considered the issue whether a judge's absence during the trial process is reversible error per se or whether it is the type of error which may be subjected to harmless error analysis. Some courts have held a judge's absence renders any judgment reached in the case null and void. *See, e.g., Peri v. State,* 426 So.2d at 1027; *Brown v. State,* 538 So.2d 833, 836 (Fla.1989) (holding that "communication from the jury must be received by the trial judge in person and the absence of the judge when a communication is received and answered is reversible error"); *Glee v. State,* 639 So.2d 1092, 1093 (Fla.1994) (if trial judge leaves courtroom during readback of testimony to jury, there is reversible error per se). *See also State v. O'Connor,* 378 N.W.2d 248, 258–59 (S.D.1985) (Henderson, J., dissenting).

Other courts will reverse a conviction on this ground only if the defendant suffered prejudice as a result of the judge's absence. *See, e.g., Haith v. United States*, 342 F.2d 158, 159 (3d Cir.1965); *Taylor v. United States*, 386 F.Supp. 132, 144–46 (E.D.Penn. 1974); *State v. James*, 110 Ariz. 334, 519 P.2d 33, 36 (1974); *People v. Garcia*, 826 P.2d 1259, 1266 (Colo.1992); *McBrady v. State*, 459 N.E.2d 719, 722 (Ind.1984); *Sand v. State*, 467 So.2d 907, 908–10 (Miss.1985). In virtually all the cases adopting a prejudice rule, however, there has been either a finding of express or implied waiver of the right to the judge's presence, or a determination that the judge, while technically absent, remained in "effective control" of the proceedings. *See, e.g., Stirone v. United States*, 341 F.2d 253, 256 (3d Cir.1965) (waiver implied from defendant's failure to object and participation in proceedings); *Haith v. United States*, 342 F.2d at 159 (same); *Taylor v. United States*, 386 F.Supp. 132 (written waiver signed and judge remained nearby in chambers); *McBrady v. State*, 459 N.E.2d at 722 (no objection and judge absent for brief periods while in chambers or another courtroom); *Grant v. State*, 385 P.2d 925, 928 (Okl.Ct. Crim.App.1963) (judge absent only momentarily); *People v. Morehouse*, 44 N.W.2d 830, 831 (Mich.1950) (no objection and judge available to rule on any disputes), *cert. denied*, 341 U.S. 922, 71 S.Ct. 739, 95 L.Ed. 1355 (1951).

In all these cases, there has been at least a judicial decision regarding the nature of the proceeding that would take place in the judge's absence or an explicit decision by the judge that his presence during the proceeding was not required. *See, e.g., People v. Garcia*, 826 P.2d at 1265 (trial judge approved admission of defendant's videotaped statements to the police, informed the jury he had already viewed the tapes, and excused himself from the courtroom while the jury viewed them).

■ The present case is different. This case does not present a situation in which a judge entertains a jury's request to rehear particular trial testimony, makes a decision whether and what part of the testimony should be read back, decides whether in fairness other testimony should also be read, finds his presence during the readback process is not required, and remains available while the readback is in progress in the event any problem arises. We express no opinion about the constitutional ramifications of such a scenario. Suffice it to say that in this case there was a complete abdication of judicial control over the process. In this structural vacuum, a rule requiring the defendant to show prejudice, or one requiring the state to show lack of prejudice, makes no sense. *See Bland v. Dep't of Corrections*, 20 F.3d 1469, 1478–79 (9th Cir.) (holding that failure to substitute counsel is structural error reversible without showing of prejudice because defendant's right to exercise choice is recognized for its own sake, not for its effect on the outcome of the proceeding), *cert. denied*, —— U.S. ——, 115 S.Ct. 357, 130 L.Ed.2d 311 (1994).

■ Nor can we say, as the state urges, that by failing to make a timely objection Riley waived his right to object to the readback and to the trial judge's absence from the proceeding. It is true that no contemporaneous objection was made, but that is beside the point. There was no opportunity to make any meaningful objection. To whom would the objection have been made? The law clerk? No judge was present to hear the objection or rule on it. *Cf. Stirone v. United States*, 341 F.2d at 255–56; *People v. Garcia*, 826 P.2d at 1266; *People v. Morehouse*, 44 N.W.2d at 831; *State v. Eberhardt*, 32 Ohio Misc. 39, 282 N.E.2d 62, 63 (Ohio 1972).[4]

---

**4.** Because the record does not support the state's contention that Riley effectively waived his right to object, we need not consider the question whether the presence of a judge during trial is the kind of right that can be waived by a failure to object. Courts which have considered this question disagree whether the right to have a judge present throughout the trial can be waived, and whether failure to object to the judge's ab-

sence constitutes waiver. *See, e.g., State v. Patterson*, 230 Conn. 385, 645 A.2d 535 (1994) (right can be waived); *Brown v. State*, 538 So.2d 833, 835 (Fla.1989) (waiver cannot be implied from failure to object); *Carter v. State*, 512 So.2d 284, 285 (Fla.Dist.Ct.App.1987) (waiver must be knowing and intelligent; stipulation by counsel insufficient).

## IV

We conclude that the trial judge's absence during the readback of the victim's direct examination, coupled with the judge's failure to rule upon the jury's request for the readback, his failure to exercise any discretion over what testimony would be read, and his unavailability during the proceeding was structural constitutional error which requires automatic reversal of Riley's conviction.

The district court's denial of Riley's petition for a writ of habeas corpus is reversed. This case is remanded to the district court with instructions to order the writ issued unless the state retries Riley within a reasonable period of time.

REVERSED.