*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MARKUS KENTAY VARY,

       Defendant-Appellant.

UNPUBLISHED
April 23, 2020

No. 344223
Ingham Circuit Court
LC No. 16-000911-FH

Before: BORRELLO, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant, Markus Kentay Vary, was convicted by a jury of transporting a person for purposes of prostitution, MCL 750.459, and accepting the earnings of a prostitute, MCL 750.457. The trial court sentenced Vary as a third-offense habitual offender, MCL 769.11, to two concurrent sentences of 160 to 480 months' imprisonment. We affirm Vary's convictions, vacate Vary's sentences, and remand for resentencing.

On July 13, 2016, Vary met the complainant ("AV") when she was leaving a retail establishment located in Lansing, Michigan. After AV divulged that she worked as a prostitute, Vary offered to provide rides and "security" for AV in exchange for a portion of the money that she earned. Because AV was homeless, Vary told her that she could stay at his friend's house in Holt, Michigan. Thereafter, Vary acquired crack cocaine for AV and drove AV to his friend's house, where AV smoked the crack cocaine. On the evening of July 14, 2016, AV met Vary and his girlfriend, Nicole Wright, at a party store in Lansing. The three then traveled to Linwood, Michigan, so that Wright and AV could meet a prostitution customer at the customer's house.[1]

---

[1] Wright drove the vehicle to Linwood. The jury was given an aiding-and-abetting instruction.

After Wright and AV performed sexual acts with the man in the early morning hours of July 15, 2016, Wright collected the money and gave it to Vary, who was waiting in a vehicle outside.

On the afternoon of July 15, 2016, Vary, AV, and Wright were apprehended during a "sting operation" at a Red Roof Inn in Lansing, where Wright intended to participate in another prostitution date. AV agreed to testify against Vary and Wright in exchange for immunity from prosecution.[2] During an interview with law enforcement, AV indicated that Vary had raped her while they were in the house in Holt. Vary was arrested and charged with transporting a person for purposes of prostitution, accepting the earnings of a prostitute, and third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b).

Vary testified in his own defense at trial. He admitted that he had sexual intercourse with AV, but he denied that it was nonconsensual. Vary also denied that he was involved with setting up prostitution dates, that he directed Wright or AV, and that he accepted any of their earnings. Vary was convicted of transporting a person for purposes of prostitution and of accepting the earnings of a prostitute. The jury was unable to reach a verdict on the CSC-III charge. Vary was sentenced to terms of imprisonment, and this appeal followed.

## I. SPECIFIC UNANIMITY INSTRUCTION

Vary argues that the trial court erred by denying his request for a specific unanimity jury instruction regarding the charge of accepting the earnings of a prostitute. We disagree. We review claims of instructional error de novo. *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018).

"A defendant has the right to a unanimous verdict and it is the duty of the trial court to properly instruct the jury on this unanimity requirement." *People v Martin*, 271 Mich App 280, 338; 721 NW2d 815 (2006). "Under most circumstances, a general instruction on the unanimity requirement will be adequate."[3] *Id*. However,

> when the state offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt. [*People v Cooks*, 446 Mich 503, 530; 521 NW2d 275 (1994).]

In other words, a specific unanimity instruction is required where the acts used to prove a single conviction are factually dissimilar or fall into conceptually distinct categories. See *id*. at 516. When the acts alleged are not materially distinct or there is no reason to believe that the jurors may be confused or disagree about the factual basis of the defendant's guilt, "a general instruction

---

[2] Wright was originally a codefendant in the case, but her case did not proceed to trial because she pleaded guilty to transporting a person for the purpose of prostitution and to soliciting prostitution.

[3] It is undisputed that the trial court gave a proper general unanimity instruction.

to the jury that its verdict must be unanimous does not deprive the defendant of his right to a unanimous verdict." *Id*. at 530.

We conclude that a specific unanimity instruction was not required because there were no distinct proofs of separate acts and there was not a risk of jury confusion. The elements of accepting the earnings of a prostitute are that the defendant (1) received money from a prostitute, (2) knew that the individual was a prostitute when he took the money, (3) knew that the money he received had been earned through prostitution, and (4) did not give the prostitute anything of value in exchange. *Martin*, 271 Mich App at 325. " '[C]onsideration' does not include the provision of goods and services that are intended to further or keep the prostitute engaged in the business of prostitution." *Id*. at 326.

The prosecutor in this case did not present multiple separate acts as evidence of the actus reus of accepting the earnings of a prostitute. Rather, the charge was based on one specific act: Vary's acceptance of $400 from Wright following Wright and AV's prostitution date with the customer in Linwood. Testimony at trial supported that, after the customer agreed to pay a certain sum of money to have a sexual encounter with Wright, Wright informed him that she was going to bring a "friend" and that it would cost $400. The customer agreed, Wright accepted the $400 from the customer, and Wright and AV participated in a "threesome" with the customer. Thereafter, Wright did not give AV a portion of the money. Instead, Wright gave the $400 to Vary. Consequently, this case did not involve "multiple acts" and there was only one incident that could have supported the charge of accepting the earnings of a prostitute. Nonetheless, Vary argues on appeal that the jury was permitted to select whose earnings Vary accepted without requiring the jury to unanimously agree on whose earnings Vary accepted without providing consideration. However, there is no evidence that the prostitution proceeds that Wright gave Vary were used for Wright and AV's transportation, food, or shelter. Indeed, testimony supports that the motel room where Wright and AV stayed from July 14 through July 15, 2016, was paid for before the "date" occurred in Linwood. Even if one could infer that gas or food purchased after the prostitution date was "consideration," there is no indication that AV received this consideration and Wright did not, or that Wright received this consideration and AV did not. In fact, by testifying that the money was not his to use, Vary essentially denied that he provided consideration to Wright or AV in exchange for the money.

In addition, there is no evidence in the record that supports Vary's contention that the jury was confused or disagreed about the factual basis of Vary's guilt with respect to the accepting the earnings of a prostitute charge. See *Cooks*, 446 Mich at 524. The jury asked no questions about that charge during deliberations and delivered a unanimous verdict on that charge. Consequently, we conclude that Vary was not entitled to a specific unanimity instruction. See *id*. at 528-530.

## II. RIGHT TO CONFRONTATION

Vary next argues that the trial court abused its discretion by admitting into evidence AV's preliminary examination testimony and that its admission violated his rights under the Confrontation Clauses of the United States Constitution. We disagree.

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). An abuse of discretion occurs when the trial

court "chooses an outcome that falls outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). This Court reviews de novo preserved constitutional issues. *People v Idziak*, 484 Mich 549, 554; 773 NW2d 616 (2009).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Unless an exception applies, hearsay is not admissible into evidence. MRE 802. One such exception is the former testimony of a declarant who is unavailable as a witness. MRE 804(b)(1). A witness is unavailable if the witness "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so[.]" MRE 804(a)(2). Under MRE 804(b)(1), where a witness is unavailable, testimony given by that witness "at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination," is admissible. Among the factors to determine whether the party "had a similar motive to examine a witness at the prior proceeding" are

> (1) whether the party opposing the testimony "had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue"; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*People v Farquharson*, 274 Mich App 268, 278; 731 NW2d 797 (2007), quoting *United States v DiNapoli*, 8 F 3d 909, 914 (CA 2, 1993).]

Even when evidence is admissible under MRE 804(b)(1), "it is still necessary to determine whether use of the testimony would violate a defendant's constitutional right to confront prosecution witnesses." *People v Meredith*, 459 Mich 62, 67; 586 NW2d 538 (1998). Testimony given at a preliminary examination is testimonial in nature and implicates the Confrontation Clause. *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 177 (2004). "Former testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). See also *Crawford*, 541 US at 68.

In this case, AV testified at the preliminary examination on October 14, 2016, and Vary's counsel cross-examined her at that time. On November 10, 2016, AV reported that she was being harassed by Vary's family. On March 28, 2018, an unknown male approached AV, threatened her with a gun, and stated that "she would be okay going into court but not fine coming out of court." AV appeared for the first day of trial on April 12, 2018, and expressed fear about testifying. Although AV was subject to a valid subpoena, she "absolutely refused" to enter the courtroom to testify despite being warned that she could be held in contempt and despite being encouraged to testify by the prosecutor, other assistant prosecutors, and members of law enforcement. The trial court was advised of this off of the record and agreed to "put the matter over" at the request of the prosecutor. Despite promising the prosecutor that she would return on April 13, 2018, AV failed to appear. The prosecutor reported that AV could not be reached by phone and could not be located by law enforcement. The prosecutor asked the trial court to declare AV unavailable under MRE

-4-

804(a)(2) and (a)(5). The trial court concluded that AV was unavailable because she persisted in refusing to testify, and the trial court permitted her preliminary examination testimony to be admitted into evidence. Vary argues that the trial court abused its discretion by concluding that AV was unavailable.

We conclude that the trial court did not abuse its discretion by finding AV to be unavailable. Although AV's "eleventh-hour decision" not to testify "is not expressly addressed under MRE 804(a)," it is "of the same character as other situations outlined in that rule of evidence." See *People v Adams*, 233 Mich App 652, 658; 592 NW2d 794 (1999). Additionally, because AV appeared on the first day of trial pursuant to a subpoena, her refusal to testify on the first day of trial and her failure return on the second day of trial constituted a refusal to testify despite an order of the court to do so.[4] See *People v Garay*, 320 Mich App 29, 37 n 1; 903 NW2d 993 (2017), overruled in part on other grounds by *People v Skinner*, 502 Mich 89; 917 NW2d 292 (2018). AV was clearly unavailable according "to the ordinary meaning of the word." *Adams*, 233 Mich App at 657-659 (emphasis omitted). Furthermore, testimony at trial regarding Vary's plan to intimidate AV,[5] evidence that AV had been threatened with a gun, and AV's fear for her safety shows that her reason for refusing to testify was "motivated by self-preservation rather than a change of heart."[6] *Id*. at 658. Although the better practice would have been for the trial court to make a record when AV was present on the first day of trial, "[i]n light of the totality of the circumstances," *id*. at 659, we hold that the trial court's decision to declare AV unavailable under MRE 804(a)(2) was within the range of reasonable and principled outcomes.[7]

Next, Vary argues that the trial court abused its discretion by admitting AV's former testimony under MRE 804(b)(1) because he did not have a similar motive to cross-examine AV at

---

[4] We find no merit to Vary's argument that the trial court should have ordered AV to testify. Because the prosecutor had subpoenaed her, "there was already an order for [her] to testify." See *People v Garay*, 320 Mich App 29, 37 n 1; 903 NW2d 993 (2017), overruled in part on other grounds by *People v Skinner*, 502 Mich 89; 917 NW2d 292 (2018).

[5] Testimony at trial supports that Vary had asked his former jail cellmate to send a letter to AV, telling her that, if she "show[ed] up in court, something bad [would] happen." Vary admitted that he wanted to "scare" AV because he knew that, if she did not appear, his charges would likely be dismissed. Vary's former cellmate did not send the letter.

[6] Testimony at trial supports that other witnesses were being intimidated or manipulated. Vary's former jail cellmate, who was scheduled to testify on April 13, 2018, did not appear on that date. A bench warrant was issued for his arrest. Vary's former cellmate appeared on April 16, 2018, and testified that he failed to appear on April 13th because he felt threatened. Additionally, Wright's mother testified that Wright received a letter from Vary in August 2017. Wright's mother read the letter and testified that she believed that Vary was "telling [Wright] what to say." Wright's mother testified that she did not like Vary, whom she had known for years, because she thought he was a manipulative person.

[7] Given that AV was clearly unavailable under MRE 804(a)(2), it is unnecessary to consider whether she was also unavailable under MRE 804(a)(5).

the preliminary examination as he would have at trial. We disagree. The prosecutor's purpose in presenting AV's testimony at the preliminary examination was the same as at trial: to show that Vary committed the charged crimes. Therefore, Vary had an "interest of substantially similar intensity" in proving or disproving AV's testimony at the preliminary examination just as he did at trial. See *Farquharson*, 274 Mich App at 278. Despite the lower burden of proof at the preliminary examination as compared to the burden of proof at trial, Vary had a similar motive to cross-examine AV in both proceedings—i.e., Vary was motivated to show that he did not commit the charged crimes. See *id.* Because the same issues were at stake in both the preliminary examination and the trial, Vary had a substantially similar interest in those issues relative to AV's testimony in each of those proceedings.[8] See *id.*

Vary also argues that AV's preliminary examination testimony should not have been read at trial because the jury lacked the opportunity to observe AV's demeanor. While witness demeanor can be important, the substantive use of preliminary examination testimony at a trial does not violate the constitutional right to confrontation as long as the prosecutor "exercised both due diligence to produce the absent witness[] and that the testimony [bears a] satisfactory indicia of reliability." *People v Bean*, 457 Mich 677, 682-683; 580 NW2d 390 (1998). As already discussed, AV persistently refused to testify, and we conclude that AV's testimony bears a satisfactory indicia of reliability. The testimony of Wright and Vary and the text messages that were admitted into evidence corroborated AV's testimony that Wright and Vary transported her to Linwood to engage in prostitution. Furthermore, AV's testimony that Wright collected the $400 provided by the Linwood customer and gave it to Vary is consistent with the testimony of Wright and Vary. Additionally, testimony supported that, when Vary was searched at the Red Roof Inn, $466 in cash was found on his person and that Vary attempted to intimidate AV and influence Wright, which supports an inference of consciousness of guilt.

In sum, the trial court did not abuse its discretion by admitting AV's preliminary examination testimony under MRE 804(b)(1), *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011), and Vary's rights under the Confrontation Clause were not violated, *Garland*, 286 Mich App at 7. See also *Crawford*, 541 US at 68.

### III. CHANGE OF JUDGES BEFORE SENTENCING

Next, Vary argues that an error occurred because the judge who sentenced him did not preside over his trial. "Generally, a defendant should be sentenced by the same judge who presided

---

[8] Vary argues that his right to confrontation was violated because the cross-examination at the preliminary examination was conducted by a different attorney than his trial attorney. He provides no authority for this argument and makes no attempt to explain why this rendered the cross-examination defective. An appellant may not simply make an assertion and leave it up to this Court to discover the basis for his claims or search for authority to support his position. *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013). Vary also contends that new evidence appeared between the time of the preliminary examination and trial, but he does not specify what the new evidence was or how it impacted the trial. This Court will not attempt to make an appellant's arguments for him. *Id.*

at [the defendant's] trial, provided that the judge is reasonably available." *People v Pierce*, 158 Mich App 113, 115; 404 NW2d 230 (1987), citing *People v Clemons*, 407 Mich 939; 291 NW2d 927 (1979). In this case, a visiting judge was assigned to, and presided over, Vary's trial. Specifically, at the beginning of trial, the visiting judge explained that he was a district court judge who had been temporarily assigned to the 30th Circuit Court by the State Court Administrator's Office. At sentencing, the prosecutor explained that the visiting judge who presided over Vary's trial was no longer assigned to the 30th Circuit Court. For that reason, the visiting judge no longer had authority to act as a circuit court judge at the time of sentencing, and was therefore not reasonably available to sentence Vary. Consequently, resentencing is not required. See *People v VanAuker (After Remand)*, 132 Mich App 394, 399; 347 NW2d 466 (1984), rev'd in part on other grounds 419 Mich 918 (1984) (holding that resentencing was not required when the visiting judge "was not reasonably available to sentence defendant since he no longer had the authority to act as a circuit judge in that circuit at the time of sentencing").

## IV. SENTENCING

Next, Vary argues that the trial court erred when scoring multiple offense variables (OVs). "We review for clear error the trial court's factual determinations, which must be supported by a preponderance of the evidence." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). "We review de novo whether the factual determinations were sufficient to assess points under OV[s]." *Id.* "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993).

### A. OV 8

Vary argues that the trial court erred by assessing 15 points for OV 8. A trial court is required to assess 15 points for OV 8 when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a); see also *People v Barrera*, 500 Mich 14, 16-17; 892 NW2d 789 (2017). For purposes of scoring OV 8, "each person who was placed in danger of injury or loss of life should be counted as a victim." MCL 777.38(2)(a).

"A victim is asported to a place or situation involving greater danger when moved away from the presence or observation of others." *People v Chelmicki*, 305 Mich App 58, 70-71; 850 NW2d 612 (2014). A place of greater danger may include "an isolated location where criminal activities might avoid detection." *People v Dillard*, 303 Mich App 372, 379; 845 NW2d 518 (2013), overruled on other grounds by *Barrera*, 500 Mich at 16-17. Asportation "can be accomplished without the employment of force against the victim," *People v Spanke*, 254 Mich App 642, 647; 658 NW2d 504 (2003), overruled on other grounds by *Barrera*, 500 Mich at 17, and "may occur even when the victim voluntarily accompanied the defendant to a place or situation of greater danger," *Dillard*, 303 Mich App at 379.

At sentencing, defense counsel objected to 15 points being assessed for OV 8. Defense counsel argued that AV "was never placed in danger of injury or loss of life" and noted that AV

voluntarily traveled to Linwood to engage in prostitution. The trial court held that OV 8 was properly scored. The court noted that "asportation need not be forcible" and that Vary moved AV to a place where "a date [was] waiting for her," which constituted a situation of greater danger.

Although Vary undeniably assisted in transporting AV from Lansing to the customer's house in Linwood and the trial court correctly noted that the fact that AV voluntarily accompanied Vary was irrelevant for purposes of scoring OV 8, the trial court did not make findings as to whether AV was a victim. We conclude that the record does not support that AV was placed in danger of physical injury or loss of life. After arriving at the customer's house in the early morning hours of July 15, 2016, Wright and AV went inside to engage in the prearranged sexual encounter while Vary remained in the vehicle. Although it is reasonable to infer that meeting a stranger who has solicited a prostitute could result in physical injury, no record evidence suggests that anyone assaulted or otherwise injured AV while she was in the Linwood house. Rather, the record evidence establishes that the prearranged sexual encounter went as planned and that AV left the house without incident after it was completed. Consequently, because a preponderance of the evidence does not support that AV was placed in danger of injury or loss of life during the sentencing offenses, the trial court erred by assessing 15 points for OV 8.[9]

B. OV 10

Vary next argues that the trial court erred by assessing 15 points for OV 10. A trial court is required to assess 15 points for OV 10 for predatory conduct; predatory conduct is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). A trial court properly assesses 15 points for OV 10 if it answers the following questions affirmatively:

> (1) Did the offender engage in conduct before the commission of the offense?

> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008).]

The day before the sentencing offenses occurred, Vary met AV at a place where prostitutes were usually located. Vary testified that he was looking for a prostitute and that he called AV over to him because he thought she was attractive. After AV confirmed that she was a prostitute and told Vary that she was homeless and was trying to locate drugs, Vary offered to provide security, transportation, and housing for AV. Vary also acquired crack cocaine for AV, and he admitted at trial that he had provided women with drugs in the past because it made it easier for them to engage

---

[9] Accepting the earnings of a prostitute and transporting a person for purposes of prostitution are both classified as Level B offenses. MCL 777.16w.

in prostitution. Thus, Vary took affirmative steps to make AV, who had a "readily apparent susceptibility to injury, physical restraint, persuasion, or temptation" given that she was homeless and seeking drugs, even more susceptible to victimization. See *Cannon*, 481 Mich at 162. In addition, a reasonable inference from all the circumstances is that Vary's primary purpose for providing AV with drugs, security, transportation, and housing was victimization. See *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012). Specifically, by providing AV with these things, it became more probable that Vary could manipulate AV, facilitate her prostitution services, and eventually obtain money from those services. Given that Vary essentially prowled for a victim in an area where he knew prostitutes gathered and then specifically targeted AV, this conduct qualified as "predatory" in a manner similar to cases involving lying in wait or stalking, rather than simple opportunism or "run-of-the-mill planning" to accomplish a crime without detection. See *People v Huston*, 489 Mich 451, 461-462; 802 NW2d 261 (2011) (citation omitted). Because these circumstances satisfy the inquiries in *Cannon*, the trial court did not err by assessing 15 points for OV 10.

## C. OV 12

Vary next argues that the trial court erred by assessing five points for OV 12. A five-point score for OV 12 is appropriate if "[o]ne contemporaneous felonious criminal act involving a crime against a person was committed[.]" MCL 777.42(1)(d). "A felonious criminal act is contemporaneous if" it "occurred within 24 hours of the sentencing offense" and "has not and will not result in a separate conviction." MCL 777.42(2)(a). Thus, when scoring OV 12, the trial court must "look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *People v Light*, 290 Mich App 717, 723; 803 NW2d 720 (2010).

The trial court assessed five points for OV 12 because it concluded that Vary had committed CSC-III within 24 hours of the sentencing offenses. However, testimony at trial supports that Vary and AV were at the house in Holt at "[a]bout 3-ish," for about "35, 40 minutes" on July 13, 2016. Text messages that were admitted into evidence support that AV left the company of Vary and Wright sometime after 5:45 p.m. on July 13, 2016, and that the transportation to Linwood occurred at some point after 7:50 p.m. on July 14, 2016, when it was "closer to nighttime" and "dark."[10] Thus, even if a preponderance of the evidence supported that Vary committed CSC-III, the record evidence supports that it occurred on the afternoon of July 13th, whereas the first sentencing offense—transportation for purposes of prostitution—occurred on the evening of July 14th. Accordingly, because a preponderance of the evidence does not support that the CSC-III occurred within 24 hours of either sentencing offense, the trial court erred by assessing five points for OV 12. MCL 777.42(2)(a)(*i*).

---

[10] The prosecutor implied in closing arguments that the transportation began around 10:00 p.m. on July 14, 2016.

## D. OV 14

Vary next argues that the trial court erred by assessing 10 points for OV 14. MCL 777.44(1)(a) requires the assessment of 10 points under OV 14 when "[t]he offender was a leader in a multiple offender situation[.]" A defendant is the leader if he "acted first or gave directions or was otherwise a primary causal or coordinating agent." *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017) (quotation marks omitted). A " 'multiple offender situation' as used in OV 14 is a situation consisting of more than one person violating the law while part of a group." *People v Jones*, 299 Mich App 284, 287; 829 NW2d 350 (2013), vacated in part on other grounds 494 Mich 880 (2013). A "multiple offender situation" can exist with only one other person present. *Id*. at 287-288.

The record evidence supports the conclusion that the "entire criminal transaction" was a multiple offender situation given that Wright was convicted of transporting a person for prostitution in relation to the incident involving the Linwood customer. *Id*. at 286. Additionally, the record supports that Vary was the leader. Specifically, Vary initiated the first contact with AV and entered into an agreement with her whereby he would provide transportation and "security" for her in exchange for a portion of the prostitution money that she earned. AV denied that she had ever spoken with Wright about the "percentage" that Vary would receive, and AV testified that Vary had asked for the prostitution money after the prostitution date in Linwood and that Wright had given it to him. Vary's initiation of contact, his entering into the agreement, and his retention of money were sufficient to show that he was the leader of the criminal transaction. Therefore, the trial court did not err by assessing 10 points for OV 14.

## E. EFFECT OF SCORING ERRORS

As already stated, the trial court did not err by scoring OVs 10 and 14. However, the trial court erred by assessing 15 points for OV 8 and five points for OV 12. Vary's Prior Record Variable (PRV) score of 55 points placed him in PRV Level E, and his total OV score of 55 points placed him in OV Level V. Subtracting 20 points from Vary's OV score of 55 changes the recommended guidelines minimum sentencing range. See MCL 777.63. Therefore, resentencing is warranted. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

## V. READING OF AV'S TESTIMONY DURING DELIBERATIONS

Vary argues that reversal is required because the court reporter read AV's preliminary examination testimony for the jury during deliberations without authorization by the trial court and without Vary being present. We disagree.

The jurors began deliberations at 12:29 p.m. on the final day of trial and returned to the courtroom at 4:22 p.m. to inform the trial court that they were deadlocked. The trial court instructed the members of the jury to continue deliberating, and they resumed deliberations at 4:25 p.m. At 4:46 p.m. they returned with the following question: "Is it reasonable to have a doubt about the rape because we were unable to experience the victim giving her testimony in person and in context?" The trial court repeated the instruction on reasonable doubt, and the jurors resumed deliberations at 4:48 p.m. Court proceedings reconvened at 5:24 p.m., and the trial court indicated that the jurors had informed the bailiff that they had reached a verdict on two counts but

were deadlocked on the CSC-III count.  The jury delivered its findings of guilt, and the trial court declared a mistrial on the CSC-III count.  After a discussion about bond occurred, the following colloquy took place:

> *The Court*:  Now, while we were all in recess, I'm advised that the court reporter, at the jury's request, read back the testimony or portions of the testimony of [AV].
>
> Now, I want to bring that to the lawyers' attention.  I'm not—I was not here.  I didn't make that decision.  I'm not holding either or any member of the staff accountable.  I'm just saying for the record, that that was done.
>
> *The Prosecutor*:  Yes, Your Honor.
>
> *Defense Counsel*:  Yes, Your Honor.  We were aware of that.
>
> *The Prosecutor*:  We were aware of that.
>
> *The Court*:  You were?  Okay.  You knew more than I did.  That's all for this record today.
>
> *The Prosecutor*:  Thank you.
>
> *Defense Counsel*:  Thank you, Your Honor.

Vary contends that the present issue should be deemed preserved for appellate review because defense counsel had no opportunity for a contemporaneous objection.  We conclude, however, that the only reasonable manner in which to interpret the above exchange is to conclude that the issue is not preserved because it was not raised below when defense counsel had a chance to raise it.  Indeed, defense counsel indicated that he was aware of the readback procedure, and when specifically informed that the trial court was making an appellate record, counsel voiced no objection to the procedure.

Therefore, we apply the plain-error rule, which requires that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."  *Id*.  Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original).  A defendant bears the burden of persuasion with respect to prejudice.  *Id*. at 763.

Even assuming that plain error occurred by the trial judge's absence, we conclude that Vary is not entitled to relief.  The general rule is that a judge's absence during a trial will not constitute reversible error unless prejudice has resulted to the defendant.  *People v Morehouse*, 328 Mich

689; 44 NW2d 830 (1950).[11]  As already stated, the absence of the trial judge occurred during jury deliberations, specifically when the jury was re-read testimony from the preliminary examination transcript.  On appeal, Vary does not make any specific allegations of prejudice.  Rather, Vary speculates that he was prejudiced because the trial judge was not "available to exercise his discretion" and because Vary does "not know what portions [of the transcript] were read or what else was said during this proceeding."  We conclude that there is no evidence of prejudice given that the jurors were merely read testimony that had already been read and which the trial court had already found to be admissible under MRE 804(b)(1).  There is no indication in the record that the jury was read a portion of AV's testimony that was not read during trial.  Indeed, review of the preliminary examination transcript establishes that, with the exception of testimony that was stricken as a result of objections by the prosecutor during the preliminary examination, AV's testimony was read in its entirety.  It is also notable that the jury did not convict Vary of the most serious charge: CSC-III.  Because only AV's testimony supported the CSC-III charge, it is clear that the jurors rejected at least some of AV's testimony.  Finally, the testimony of AV supporting the crimes of which Vary *was* convicted was corroborated by the testimony of Wright and Vary, by text messages that were admitted into evidence, and by evidence that Vary was found with $466 on his person on July 15, 2016.  Additionally, evidence was presented that Vary attempted to intimidate AV and influence Wright, which supports an inference of consciousness of guilt.  In light of these circumstances, we conclude that Vary has failed to carry his burden of demonstrating prejudice.  See *Carines*, 460 Mich at 763.

Furthermore, even if we were to conclude that Vary's substantial rights were affected, he would not automatically be entitled to reversal.  Rather, "[r]eversal is warranted . . . when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."  *Id*. at 763-764.  In this case, the trial judge's absence was limited to a period of time when the jurors were re-read AV's preliminary examination testimony.  Additionally, overwhelming evidence supports that Vary had accepted money from Wright after Wright and AV engaged in a prearranged sexual encounter with the customer in Linwood and that Vary had aided in transporting AV to Linwood for that very purpose.  Based on this record, we conclude that Vary is not entitled to relief under plain-error review.[12]

---

[11] Vary relies heavily on *Riley v Deeds*, 56 F3d 1117 (CA 9, 1995) and *Gomez v United States*, 490 US 858; 109 S Ct 2237; 104 L Ed 2d 923 (1989), to support his argument that this Court should find that structural error occurred because of the trial judge's absence.  However, federal circuit-court cases are not binding on this Court, *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013), and we conclude that the facts in *Gomez* are distinguishable from the facts in this case.

[12] Vary argues that a cautionary instruction should have been given so that the jury did not overemphasize the re-read testimony or take it out of context.  But in the very case he cites in support of this argument, *United States v Rodgers*, 109 F3d 1138, 1145 (CA 6, 1997), the court applied a plain-error standard of review to the failure to give such an instruction.  As already discussed, Vary has not established prejudice by virtue of the trial judge's absence during the

-12-

In a pro se supplemental brief filed under Supreme Court Administrative Order No. 2004-6, Vary argues that his due process rights were violated because the court clerk engaged in ex parte communications with the jury when she re-read AV's testimony. To support this argument, he cites *People v France*, 436 Mich 138, 142; 461 NW2d 621 (1990), which concerned "communication with a deliberating jury outside the courtroom and the presence of counsel." In this case, however, it is not clear from the record that the prosecutor and defense counsel were not present when the readback occurred. Furthermore, in *France*, 436 Mich at 162, the Court stated that ex parte communications are not subject to automatic reversal. Rather, the *France* Court held that "[a] reviewing court must reverse the conviction [only] if it determines that a defendant has been prejudiced by an ex parte communication with the jury." *Id*. at 163. Because we conclude that Vary was not prejudiced for the reasons already discussed, he is not entitled to relief on this ground. See *id*.

Next, Vary argues that the readback amounted to a violation of the right to a public trial. However, Vary cites no authority concerning the right to a public trial, and an appellant may not simply make an assertion and leave it up to this Court to search for authority to sustain his position. *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013). At any rate, even assuming that there was a violation of the right to a public trial, applicable caselaw, viewed in light of the facts at hand, indicates that reversal is not required. In *People v Vaughn*, 491 Mich 642, 646, 655, 664-666; 821 NW2d 288 (2012), our Supreme Court, in analyzing a case wherein jury voir dire was conducted in a closed courtroom, implied that the closure of the courtroom was a plain, structural error. The *Vaughn* Court went on to state, however, that even if such a plain, structural error occurred, reversal was not required because the second "half" of the *Carines* plain-error standard did not warrant reversal. *Id*. at 666-669. In other words, the Court concluded that the closure of the courtroom did not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings" because "the closure of the courtroom was limited to a vigorous voir dire process that ultimately yielded a jury that satisfied both parties[.]" *Id*. at 668 (citation omitted). As already discussed, the jury in this case was merely read portions of already-admitted testimony, and defense counsel did not object. Because the fairness, integrity, or public reputation of judicial proceedings was not seriously affected, Vary is not entitled to relief. See *id*.

Vary also argues that his trial counsel was ineffective because counsel failed to advise Vary of his right to be present for the readback. But a defendant bears the burden of establishing the factual basis for a claim of ineffective assistance of counsel, *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), and Vary did not make any record in the trial court demonstrating that, had he been present for the readback, he would have acted in some manner leading to a reasonable probability of a different verdict. See *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015). Consequently, Vary's ineffective assistance of counsel claim fails.

Finally, Vary argues that the readback amounted to an absence of counsel and violated his right to have counsel present during all stages of the proceedings. However, Vary has failed to establish that counsel was, indeed, absent from the readback, *People v Elston*, 462 Mich 751, 762;

---

readback, and for similar reasons, we conclude that he has also not established prejudice with regard to the absence of a cautionary instruction. See *Carines*, 460 Mich at 763.

641 NW2d 595 (2000), or that counsel was prevented from assisting Vary, *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 657 (1984). In fact, the record reflects that counsel knew about the procedure employed and did not object to it. Consequently, Vary's right to counsel claim also fails.

We affirm Vary's convictions, but vacate Vary's sentences and remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron